## 23493. GEORGIA SOUTHERN & FLORIDA RAILWAY COMPANY v. TIFTON PRODUCE COMPANY.

DECIDED SEPTEMBER 19, 1934.

*J. E. Hall, C. J. Bloch, R. D. Smith, Steve F. Mitchell,* for plaintiff in error.

*Robert R. Forrester,* contra.

JENKINS, P. J. The petition as amended states substantially the following case: that on June 25, 1930, the plaintiff delivered a car of melons to Georgia Northern Railway Company, for transportation to Atlanta, Georgia, for diversion at that place to some other destination; that on June 30, the defendant, Georgia, Southern & Florida Railway Company, a common carrier affiliated with the Southern Railway Company as a part of its system, in pursuance of a customary arrangement by which it would issue bills of lading in lieu of others issued by carriers not forming a part of that system, and would route shipments over parts of the Southern Railway Company, and, in consideration of like services to it by that company, issued at Tifton, Georgia, a bill of lading to the plaintiff in lieu of the one issued by the Georgia Northern Railway Company, at Pavo, Georgia, which last bill of lading called for the shipment to be delivered at Harlem River, New York, over the "Southern, Penna., and N. Y., N. H. & H. R. R." lines; that the shipment was to move over the lines of the Georgia Northern Railway to Albany, Georgia, and thence by the Central of Georgia Railway to Atlanta; it being conceded by the plaintiff that "the actual carload of melons was not handled by the defendant," that the Southern Railway Company and the defendant, are "separate entities," yet "closely affiliated, being members of the same railway system," having the same general freight agent and employees at Tifton "for

the purpose of soliciting freight," but it being contended that the defendant is liable, although it may not have received any remuneration for the haul, because it "would benefit under the general arrangement" whereby melons would be routed over its line whenever a shipment would touch its line. It does not appear that the defendant received any of the freight charges for this shipment. Damages are claimed because of the alleged delay and negligent handling of the melons. The court overruled the general and special demurrer of the defendant, which raised the questions that no negligence or violation of any obligation by the defendant, and no responsibility on its part as an initial carrier under the "Carmack amendment" to the interstate-commerce act, appear; that no liability for the full value of the goods is shown; and that the relation of the defendant to the Southern Railway Company is insufficiently alleged.

The shipment in question being interstate, from Pavo, Georgia, to New York, the liability of the defendant, if responsible as the initial carrier for any negligence of intermediate or delivering carriers, would be controlled by the Federal interstate-commerce statutes, as amended by the Carmack and Cummins acts, which, so far as material here, provide that "any common carrier, railroad or transportation company subject to the provisions of this act receiving property for transportation from a point in one State . . to a point in another State . . shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose . . lines such property may pass, . . when transported on a through bill of lading." See *Fleshnar* v. *So. Ry. Co.*, 160 *Ga.* 205, 209 (127 S. E. 768) ; *Central of Ga. Ry. Co.* v. *Yesbik,* 146 *Ga.* 769 (2), 771 (92 S. E. 527) ; Adams Express Co. *v.* Croninger, 226 U. S. 491 (33 Sup. Ct. 148, 57 L. ed. 314, 44 L. R. A. (N. S.) 257) ; *Central of Ga. Ry. Co.* v. *Clark Milling Co.,* 40 *Ga. App.* 113, 115 (149 S. E. 77). Under the petition, the most that can be said is that the defendant assumed to act as agent for other carriers in issuing for them its own bill of lading routing the goods over their lines, but had no part in receiving, storing, or transporting the property, and received no portion of the freight charges.

It thus being conceded that the defendant in no way participated in the handling of the shipment or in the charges paid, the defendant can not be held liable as connecting or delivering carrier for any actual negligence in the handling of the goods; nor can it be held liable as initial carrier for the negligent acts of other carriers, since it never *received the "properly for transportation,"* within the language and meaning of the interstate-commerce acts. The agents of a railroad company that is not in fact an initial carrier can not by mere written fiat assume for it such a status. If the carrier is in fact the inital carrier and it is so intended, a bill of lading acknowledging the receipt for shipment of goods is binding upon the carrier in any claim for "damages caused by the non-receipt by the carrier of all or part of the goods, or their failure to correspond with the description thereof in the bill at the time of its issue," even though the goods may not in fact have been received by the carrier's agent, "the scope of whose actual or apparent authority includes the receiving of goods and issuing of bills of lading therefor" in interstate or foreign commerce. Sec. 22, Fed. bills of lading act, 39 U. S. Stat. 542, U. S. C. A. 409, title 49, § 102; Gleason *v.* Seaboard Ry., 278 U. S. 349, 355 (49 Sup. Ct. 161). In like manner it has been held that one who participates in the handling of the goods by receiving them for transportation and merely switches them to the tracks of another carrier for transportation is an initial carrier. Barrett *v.* Northern Pac. R. Co., 29 Idaho, 139 (157 Pac. 1016); Alton Piano Co. *v.* Chicago R. Co., 139 N. W. 743 (152 Wis. 156); Golden Grain Milling Co. *v.* St. Louis R. Co., 226 Ill. App. 116; John Deere Plow Co. *v.* American Express Co. (Mo. App.), 203 S. W. 488. Also, a contract as initial carrier has been upheld where the bill of lading was issued by it at a point at which the goods had been delivered to the plaintiff by another carrier. Victor Produce Co. *v.* Western Transit Co., 135 Minn. 121 (160 N. W. 248). In like manner a contract as initial carrier has been upheld where the company issuing the bill of lading merely furnished the cars for an interstate shipment. Utz *v.* Chicago &c. Ry. Co. (Mo. App.), 208 S. W. 640. It does not appear, however, that where the only act of the company issuing the bill of lading consists in the execution of the writing itself, such execution can convert the company into an initial carrier, where it receives no benefit, does not participate in the transportation, and

by the bill of lading actually routes the goods from beginning to end over the lines of other and different companies.

*Judgment reversed. Sutton, J., concurs. Stephens, J., dissents.*